UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| CHRISTOPHER PEYTON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 0:23-CV-64-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL AKERS, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On August 14, 2023, Magistrate Judge Candace Smith entered an Order and Report and Recommendation ("Recommendation"). [R. 8]. The Recommendation does not reach the merits of petitioner Christopher Peyton's substantive claims, instead suggesting dismissal of this action because Peyton did not file his habeas corpus petition in time and failed to exhaust his claims. *See* [R. 8, p. 1]. Peyton has filed timely Objections to the salient portions of the Recommendation. *See* [R. 15]. The Court has thoroughly reviewed the entire record, the relevant legal authority, the Recommendation, and the Objections. With peripheral supplementation as set forth below, the Court agrees with Magistrate Judge Smith's careful analysis and adopts it as its own.

**I**

In October 2014, Peyton was charged in the Circuit Court of Morgan County, Kentucky, with murder in violation of Ky. Rev. Stat. 507.020 and tampering with physical evidence in violation of Ky. Rev. Stat. 524.100. [R. 1-1, p. 2].[1] In March 2016, Peyton reached an agreement

---

[1] *See Commonwealth v. Peyton*, No. 14-CR-38-1 (Morgan Cir. Ct. 2014) (docket available at https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=088&court=1&division=CI&caseNumber=14-CR-00038-001&caseTypeCode=CR&client_id=0 (accessed March 21, 2024) (hereinafter, "Trial Docket"). The Recommendation took judicial notice of the Trial Docket, *see* [R. 8, p. 2 n.2]. The Court

to plead guilty to these crimes.  [R. 1, p. 1]; [R. 1-1, p. 3].  A sentencing hearing was held the following month, at which time Peyton was sentenced to 25 years imprisonment.  Judgment was entered on May 11, 2016.[2]  Peyton did not appeal.[3]  *See* [R. 1, p. 2].

In June 2017, Peyton filed in the Morgan Circuit Court a motion for post-conviction relief pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42.  *See* [R. 1, p. 3]; [R. 1-1, p. 3].  In his petition, Peyton states that he filed his motion on June 9, 2017.  *See id.*  In his Objections, Peyton clarifies that this was the date he "deposited his RCr 11.42 motion in the prison's legal mailing system with postage affixed."  [R. 15, p. 3].  The Morgan Circuit Court received Peyton's motion on June 15, 2017, and stamped it filed on that date.  *See id.* (noting that "the state court receiv[ed] and stamp[ed] Petitioner's RCr 11.42 motion as 'filed' on June 15, 2017"); *see also* Trial Docket.

In the ensuing six years, Peyton has amended or supplemented his RCr 11.42 motion on numerous occasions to add new claims, withdraw others, and later reinstate some claims.  He has been represented by a handful of different court-appointed and privately retained attorneys.  Peyton also filed a separate motion to vacate his conviction pursuant to Rule 60.02 of the Kentucky Rules

---

does so again here: courts may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record," *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969).

[2] The Recommendation states that Peyton was found guilty following a jury trial.  *See* [R. 8, p. 2].  Peyton's petition, as well as a careful review of the Trial Docket, establish that this statement in the Report was not accurate.  *See* [R. 1, p. 1 (chronological entries in the Trial Docket)].  Peyton points out the Report's error; relies upon it to broadly assert that CourtNet - the online statewide docket facility maintained by the Kentucky court system and which provides access to the Trial Docket - is "inherently unreliable"; and objects to this Court referring to state court records referenced within it to establish pertinent dates in this case.  *See* [R. 15, pp. 1–2].  The Court rejects Peyton's argument, both generally and with respect to the specific matters at issue in this case, for the reasons discussed more fully below.

[3] Peyton takes issue with the Magistrate's five-fold reference to the fact that he did not appeal, complaining that it "poisoned her entire R&R."  *See id.* at 2–3.  Not so: the absence of an appeal was critical to conviction finality, commencing the limitations period central to the Report's timeliness analysis.  *See* [R. 8, pp. 4–6].  Peyton's objection is unfounded.

of Civil Procedure, asserting additional grounds for relief. Numerous status hearings have been held; no evidentiary hearing has been conducted. The trial court has not ruled on Peyton's RCr 11.42 motion, which still pends. *See* [R. 1-1, pp. 3-4]; Trial Docket.

Peyton, claiming that the "trial court has utilized procedural hurdles to delay ruling on the merits for six years," [R. 1, pp. 3-4], filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on May 19, 2023. That is the date Peyton signed his petition and stated under penalty of perjury that he had placed it in the prison mail system for filing in this Court.[4] *See* [R. 1, p. 15]; [R. 1-1, p. 59]. Peyton's petition was referred to Magistrate Judge Smith for initial review pursuant to General Order 23-10, ¶ 2 (Apr. 7, 2023). *See also* Rule 10 of the Habeas Rules. As noted above, Peyton has now filed his Objections to the Magistrate Judge's Recommendation, which are now before the Court for decision.

## II

The Court reviews *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). *See also* 28 U.S.C. § 636(b)(1)(C); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). The Court is not required to review a matter to which a party has made no objection. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Likewise, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). It is true, of course, that *pro se*

---

[4] The federal courts apply the "prison mailbox rule" to the initial filing of a Section 2254 petition. *See* Rule 3(d) of the Rules Governing Section 2254 Cases and Section 2255 Proceedings (Dec. 1, 2019) ("Habeas Rules"); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012) ("Under the prison mailbox rule, a habeas petition is considered filed when the prisoner provides the petition to prison officials for filing."). And the mailbox rule assumes "that, absent contrary evidence, a prisoner does so on the date he or she signed the [filing]." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

filings are construed more liberally than those made by those proceeding with the assistance of counsel. *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). Still, "[o]bjections that merely state disagreements with the magistrate judge's conclusion or restate arguments previously presented to the magistrate judge are [also] improper." *United States v. David*, 421 F. Supp. 3d 433, 440 (E.D. Ky. 2019), *aff'd*, No. 20-5835, 2021 WL 5782360 (6th Cir. Dec. 7, 2021).

**A.      Peyton's Section 2254 Petition is Time-Barred.**

The Recommendation properly considered the timeliness of Peyton's petition before considering the merits of his claims. *See Daniels v. United States*, 532 U.S. 374, 381 (2001) ("Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

1.      Taking judicial notice of state court records is appropriate.

Before engaging in the calculus involved in deciding the limitations issue, the Court addresses Peyton's objection to the Court taking judicial notice of records found on CourtNet to establish the filing date of his RCr 11.42 motion. *See* [R. 15 at pp. 1-2]. At the outset, it is hard to see why Peyton interposes this objection at all: in his Objections, Peyton *agrees* with the Recommendation's conclusion (which was reached by referencing CourtNet) that the Morgan Circuit Court stamped his RCr 11.42 motion as filed on June 15, 2017. *See* [R. 15, p. 3] (noting that "the state court receiv[ed] and stamp[ed] Petitioner's RCr 11.42 motion as 'filed' on June 15, 2017").[5]

---

[5] Peyton "requests to be heard" regarding the matters to be judicially noticed. [R. 15, p. 2]. The Federal Rules of Evidence provide him that right, even after the Magistrate Judge took judicial notice. *See* Fed. R. Evid. 201(e) ("If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."). However, Peyton's right to be heard was satisfied because he was afforded the opportunity - which he took - to file objections to the Magistrate Judge's Recommendation. *See Amadasu v. The Christ Hosp.*, 514 F.3d 504, 508 (6th Cir. 2008) (holding that, under Rule 201(e), because "Amadasu had an

In any event, Peyton's objection is unfounded: "This court and numerous others routinely take judicial notice of information contained on state and federal government websites." *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017); *see also Demis*, 558 F. 3d at 513 n.2.  Of course, the scope of information amenable to judicial notice-taking is limited: "consideration of and citation to an earlier case is permissible for a court at dismissal stage, but courts should not take judicial notice at the Rule 12 stage of the truth of matters subject to reasonable dispute contained in earlier cases." *Mills v. Barnard*, 869 F.3d 473, 486 (6th Cir. 2017) (cleaned up); *see also Stafford v. Jewelers Mut. Ins.*, 554 F. App'x 360, 369 (6th Cir. 2014) (noting that "taking judicial notice of documents has been limited by some courts to allow only 'the use of such documents for the fact of the documents' existence, and not for the truth of the matters asserted therein.").  Here, the Recommendation took judicial notice of a filing date – a matter established by the Morgan Circuit Court itself, not a disputed fact asserted by a party.

In addition, while Peyton broadly claims that CourtNet is unreliable, the Court need not rely upon text entries in the Morgan Circuit Court's online docket to establish the date his RCr 11.42 motion was filed.  The June 15, 2017, filing date for his RCr 11.42 motion is confirmed in two different motions, filed five years apart and by Peyton's own court-appointed counsel.  On August 29, 2018, and again on March 27, 2023, the Kentucky Department of Public Advocacy ("DPA") moved to withdraw from representing Peyton on the ground that his "post-conviction proceeding . . . is not a proceeding that a reasonable person with adequate means would be willing to bring at his or her own expense" as required to warrant DPA representation pursuant to Ky. Rev. Stat. 31.110(2)(c).  Those motions are not merely referenced as text entries in the Trial

---

opportunity to be heard on the issue of judicial notice through the filing of his objections to the magistrate judge's report and recommendation and the filing of his request for a hearing, a formal hearing was not necessary in this case").

Docket: portable document format ("PDF") versions of the actual filings are available for download and review.  And in both motions, Peyton's counsel expressly stated that "[o]n June 15, 2017, Movant filed a *pro se* Motion pursuant to RCr 11.42."  As noted above, Peyton himself acknowledges the correctness of this filing date (at least as a factual matter) in his Objections.

Peyton cites a handful of Kentucky cases which hold that a Kentucky court may not use CourtNet to establish the fact of a prior conviction when imposing a criminal sentence.  *See* [R. 15-1, p. 2 n.3].  *Cf. Finnell v. Commonwealth*, 295 S.W.3d 829, 835 (Ky. 2009).  But this Court's use of that online docket is only to establish the date a document was filed.  Kentucky courts have routinely approved reference to information contained on CourtNet for such mundane tasks.  *See, e.g.*, *Davis v. Commonwealth*, No. 2019-CA-1082-MR, 2021 WL 1235760, at *8 (Ky. Ct. App. Apr. 2, 2021) (finding trial court committed no error by using information on CourtNet to identify possible aliases for the defendant).  For example, the Kentucky Supreme Court has recently found no error in using information from CourtNet to confirm the defendant's name, date of birth, as well as his address *on a particular date*, noting that *Finnell* was not violated so long as CourtNet was not used to prove a defendant's criminal history or the status of a court case.  *See Garrett v. Commonwealth*, 534 S.W.3d 217, 227 (Ky. 2017).  And the Kentucky Court of Appeals has more recently held that "under KRE 201 it may be appropriate to notice court records for the occurrence and timing of matters reflected in them – the holding of a hearing, say, *or the filing of a pleading* – but it will generally not be appropriate to notice the truth of allegations or findings made in another matter, since such allegations or findings generally will not pass the 'indisputability' test.'" *Lage v. Esterle*, 591 S.W.3d 416, 421 (Ky. Ct. App. 2019) (emphasis added) (citing, *inter alia*, *Marchese v. Aebersold*, 530 S.W.3d 441, 446–48 (Ky. 2017)).

Of course, judicial notice taken by this Court is governed by the Federal Rules of Evidence, not their Kentucky counterparts. *See* Fed. R. Evid. 101(a). Applying the applicable rule, Fed. R. Evid. 201(b), (c)(1), federal courts have not hesitated to take judicial notice of filing dates contained on other court dockets to determine the timeliness of later proceedings. *Cf. Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020) (*citing Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record.")); *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651-52 (11th Cir. 2020); *Craft v. Middleton*, 524 F. App'x 395, 397 n.4 (10th Cir. 2013); *see also Dale v. Selene Fin. LP*, No. 3:15-CV-1762, 2016 WL 6024580, at *1 n.2 (N.D. Ohio Oct. 14, 2016) ("I have taken judicial notice of the docket entries in the underlying foreclosure case to confirm the fact and dates of various filings."), *aff'd*, No. 16-4296, 2018 WL 2222598 (6th Cir. Mar. 16, 2018); *Goods v. Cnty. of Kern*, No. 1:19-CV-0664-DAD-JLT, 2019 WL 2249659, at *2 (E.D. Cal. May 23, 2019) (to like effect); *JP Morgan Chase Bank, N.A. v. Haun*, No. 6:18-CV-1990-AA, 2020 WL 13663983, at *2 (D. Or. Jan. 16, 2020) (same); *Kozy v. Countrywide Home Loans*, No. 09-CV-621-OWW-GSA, 2009 WL 4250412, at *6 (E.D. Cal. Nov. 18, 2009) (same). The Court, in full accord with Kentucky law, federal law, and Peyton's own concession, takes judicial notice that his RCr 11.42 motion was filed and docketed in the Morgan Circuit Court on June 15, 2017.

2.    Peyton is Not Entitled to Tolling under Section 2254(d)(2).

A federal habeas corpus petition under Section 2254 must be filed within one year after one of four triggering dates. *See* 28 U.S.C. § 2244(d)(1)(A)–(D). In his petition Peyton argued, and the Recommendation agreed, that his petition was due one year after "the date on which the

judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* [R. 1 at pp. 12-13; R. 8 at pp. 4-5 (referencing 28 U.S.C. § 2244(d)(1)(A)].[6]

The pertinent dates are not in dispute. The Morgan Circuit Court entered judgment against Peyton on May 11, 2016. [R. 1, p. 1]. Section 2244(d)(1)(A) establishes judgment finality upon "the conclusion of direct review or the expiration of the time for seeking such review." Because Peyton did not file a direct appeal, the criminal judgment became final when the deadline to do so expired under Kentucky law. *Gonzales v. Thaler*, 565 U.S. 134, 137 (2012); *Keeling*, 673 F.3d at 459–60. Kentucky law permits a criminal defendant to appeal within "thirty (30) days after the date of entry of the judgment or order from which it is taken." Ky. R. Crim. P. 12.04(3). That date, which accomplished judgment finality, fell on Friday, June 10, 2016.[7] *Cf. Burch v. Mazza*, No. 1:20-CV-204-GNS-HBB, 2021 WL 8824826, at *3 (W.D. Ky. June 8, 2021), report and recommendation adopted, 2022 WL 2121647 (W.D. Ky. June 13, 2022). Peyton's Section 2254 petition was due one year later, on June 10, 2017. 28 U.S.C. § 2254 (d)(1); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Peyton did not file his petition until May 2023, nearly six years too late. Absent some form of tolling, it is time barred and must be dismissed.

---

[6] In his Objections, Peyton asks the Court to permit him to assert - on appeal to the Sixth Circuit and for the very first time - that "his petition is timely due to the discovery of the factual predicate of his claims[.]" [R. 15, pp. 3–4] (impliedly referencing Section 2244(d)(1)(D). The Court rejects Peyton's effort to withhold presently pertinent arguments that could and should have been made in his petition and/or Objections in reserve for later consideration in the first instance. As this Court has previously held, "[t]he question of timeliness encompasses both satisfaction of the limitations period and any entitlement to equitable tolling. A party therefore cannot assert one argument while holding another in reserve to be presented later, asserting his grounds for relief *in seriatim* rather than simultaneously." *Boulder v. Chandler*, No. 5:21-CV-314-CHB-EBA, 2023 WL 2561772, at *3 (E.D. Ky. Mar. 17, 2023) (collecting cases).

[7] In his petition, Peyton asserted incorrectly that his conviction became final on May 21, 2016, ten days after judgment was entered when his deadline to file a motion for a new trial lapsed. *See* [R. 1-1, p. 13]. Given that the Recommendation defers judgment finality by twenty days beyond that contemplated by Peyton's calculus, he predictably does not object to that aspect of the Recommendation. *See* [R. 15, p. 3].

The habeas statute itself provides one form of tolling: the limitations period does not run during a period when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). When the one-year § 2244(d)(1) limitations period has run, it has run, and can no longer be "tolled" if there is not a state post-conviction motion already pending. *Vroman*, 346 F.3d at 602; *see also Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("[E]ven 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period."); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) ("Here, in contrast, Jiminez filed his state habeas petition on March 3, 1998, well after the AEDPA statute of limitations ended. That delay resulted in an absolute time bar to refiling after his state claims were exhausted.").

Peyton's entitlement to statutory tolling thus turns on whether he "filed" his RCr 11.42 motion by June 10, 2017, one year after conviction finality. As noted above, Peyton mailed his RCr 11.42 motion on June 9, 2017 – one day before the §2244(d)(1) filing deadline – but it was not received and docketed until June 15, 2017 - five days after the deadline. Peyton agrees that these are the correct dates, *see* [R. 15, p. 3], so deciding this issue turns not on a factual question but a legal one: whether, as a matter of Kentucky law, his RCr 11.42 motion was filed when it was *received* in the Morgan Circuit Court or whether, pursuant to the "prison mailbox rule," when he *mailed* it.

The Recommendation correctly concluded that Kentucky law dictates that receipt governs the filing date. *See* [R. 8, pp. 4–6]. The United States Supreme Court has explained that a state application for post-conviction relief "is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which

it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Thus, "the timeliness of [a state] prisoner's post-conviction petition is governed by state statute." *Vroman*, 346 F.3d at 603. Peyton's RCr 11.42 motion was *received* by the Morgan Circuit Court on June 15, 2017, *after* § 2244(d)(1)'s one-year limitation period had already passed. So his Section 2254 petition is untimely unless Kentucky law applies the "prison mailbox rule" to the filing of his RCr 11.42 motion. If it does, Peyton's RCr 11.42 motion is deemed filed on the day he *mailed* it on June 9, 2017, one day *before* § 2244(d)(1)'s limitation period.

The Recommendation correctly noted that this Court has previously held that Kentucky does not apply the prison mailbox rule to the initial filing of a RCr 11.42 motion:

> In Kentucky, the prison mailbox rule applies only to direct appeals. *Moorman v. Commonwealth*, 484 S.W.3d 751, 754 (Ky. App. 2016) ("Kentucky adopted RCr 12.04(5), which created the prison mailbox rule" for direct appeals. Only "the equitable tolling doctrine still applies to post-conviction proceedings"); *Ordway v. Jordan*, 2020 WL 1285924, at *2 (W.D. Ky. Mar. 18, 2020) ("[RCr 12.04(5)] unambiguously states it applies to appeals. . . . [Post-conviction] motions are not entitled to the special filing rule under Kentucky state law.").

*Boulder*, 2022 WL 19078306, at *3.

In his Objections, *see* [R. 15, pp. 4–5], Peyton relies upon an earlier (though still recent) decision out of this district applying the prison mailbox rule to the initial filing of a RCr 11.42 motion:

> Slone's RCr 11.42 motion was not filed in Perry Circuit Court until October 6, 2015. [R. 16-3 at p. 133]. However, it included a "notice" that it was mailed on September 10, 2015. [R. 16-3 at p. 27-28]. Under the "prison mailbox rule," Slone's RCr 11.42 motion was deemed "filed" on the day it was placed in the prison mail system. *See Hallum v. Commonwealth*, 347 S.W.3d 55, 56 (Ky. 2011); *Anderson v. Commonwealth*, No. 2012-CA-001869-MR, 2014 Ky. App. Unpub. LEXIS 168, at *14-15, 2014 WL 812886 (Ct. App. Feb. 28, 2014) (applying prison mailbox rule to a RCr 11.42 motion). Thus, the filing date of Slone's RCr 11.42 motion is September 10, 2015.

*Slone v. Hart*, No. 6:19-CV-58-REW-EBA, 2021 WL 3704381, at *1 n.1 (E.D. Ky. Feb. 17, 2021),

report and recommendation adopted, 2021 WL 3207943 (E.D. Ky. July 29, 2021).  As explained

more fully in footnote 9, *infra*, the confusion is understandable.  But the Court must respectfully

disagree with the quoted portion of the magistrate judge's conclusion in *Slone* and declines to

follow it.[8]

First, *Slone* cites the Kentucky Supreme Court's decision in *Hallum* for the proposition that

a "RCr 11.42 motion [is] deemed 'filed' on the day it was placed in the prison mail system."  But

*Hallum* involved *an appeal* from the denial of relief under RCr 11.42, not the initial filing of an

RCr 11.42 motion, which was the concern in *Slone* (and in this case).  *See Hallum*, 347 S.W.3d at

56.  That is an essential distinction, as the Kentucky Supreme Court noted, because since January

1, 2011, the timeliness of an appeal in a criminal case in Kentucky is governed by a specific statute.

To wit:  amendments to Rule 12.04(5) of the Kentucky Rules of Criminal Procedure, created a

statutory "prison mailbox rule" for *appeals* filed in Kentucky criminal cases.  *See* RCr 12.04(5)

("If an inmate files a notice of appeal in a criminal case, the notice shall be considered filed if its

envelope is officially marked as having been deposited in the institution's internal mail system on

or before the last day for filing with sufficient First Class postage prepaid.").  No such rule applies

to the initial filing of an RCr 11.42 motion in the first instance with the Kentucky trial court.  *See*

*Moorman*, 484 S.W.3d at 754; *McAlister v. Commonwealth*, No. 2014-CA-1267-MR, 2016 WL

1068998, at *4 (Ky. Ct. App. Mar. 18, 2016); *Ordway*, 2020 WL 1285924, at *2 (holding that RCr

11.42 motions "are not entitled to the special filing rule under Kentucky state law," referring to

the prison mailbox rule codified in RCr 12.04(5)); *Kimble v. Valentine*, No. 3:19-CV-802-GNS-

---

[8]  Even with the earlier filing date in that case, Slone conceded that his Section 2254 petition was still untimely.  *Slone*, 2021 WL 3207943 at *1.  The ultimate outcome in that case was therefore unaffected by the divergent holdings in the two cases.

LLK, 2020 WL 13824052, at *1 n.2 (W.D. Ky. Apr. 9, 2020) ("Kentucky follows the mailbox rule for direct appeals but not post-conviction motions."), report and recommendation adopted in pertinent part, rejected in part, 2020 WL 13824051, at 2 n.2 (W.D. Ky. July 28, 2020). *Slone*'s reliance upon *Hallum* was therefore misplaced.

Second, *Slone* states that in *Anderson*, an unpublished case, the Kentucky Court of Appeals "appl[ied the] prison mailbox rule to a RCr 11.42 motion." That is incorrect. *Anderson* did involve the timeliness of an initial filing of an RCr. 11.42 motion. But the Kentucky Court of Appeals concluded that the doctrine of equitable tolling, not the prison mailbox rule, provided grounds to deem the otherwise-tardy motion in that case timely filed:

> In [*Kollros v. Commonwealth*, 2012 WL 4839557 (Ky. App. 2012)], this Court found that Kollros's RCr 11.42 motion was clearly untimely. Nevertheless, in discussing the filing of RCr 11.42 motions, we clearly stated that the three-year time limitation may be equitably tolled where the defendant has acted with due diligence to file the motion within the time period. ... *Kollros* at 1, *citing Robertson v. Commonwealth*, 177 S.W.3d 789, 792 (Ky. 2005), *overruled on other grounds in Hallum v. Commonwealth*, 347 S.W.3d 55 (Ky. 2011). We agree with the reasoning set forth in *Krollos*, and find it to be applicable to the matter *sub judice*.
>
> . . .
>
> Accordingly, we believe equitable tolling was appropriate in this instance and that the court exceeded its discretion in declining to apply those principles below.
>
> . . .
>
> While the mailbox rule was not expressly adopted by our Supreme Court in *Hallum*, we believe that consistency in the application of the prison mailbox rule to both notices of appeal and RCr 11.42 motions will yield the most equitable, reasonable and fair result. *Regardless*, Anderson presents equitable arguments that when gauged under the *Robertson* factors weigh *in favor of our finding that the application of the equitable tolling analysis* would attain the correct result.

*Anderson*, 2014 WL 812886, at *4–5 (Ky. App. Feb. 28, 2014) (emphasis in final paragraph added). The Kentucky Court of Appeals has since repeatedly expressed this understanding of *Anderson*'s holding. *See, e.g.*, *McAlister*, 2016 WL 1068998 at *3–4 ("In *Anderson*, the Court of

- 12 -

Appeals suggested the adoption of the prison mailbox rule to both notices of appeal and RCr 11.42 motions would 'yield the most equitable, reasonable and fair result' *but applied equitable tolling.* . . . The circuit court was correct in its determination that the prison mailbox rule contained in RCr 12.04(5) does not apply to McAlister's filing of his RCr 11.42 motion.")[9] (cleaned up) (emphasis added).  The Court therefore declines to follow this holding in *Slone*.[10]

As a matter of Kentucky law, Peyton's post-conviction motion was "filed" on June 15, 2017, when it was actually received by the Morgan Circuit Court, not when he mailed it six days beforehand.  Because Section 2244(d)(1)'s limitation period had already expired by that date, tolling under Section 2244(d)(2) does not apply.

    3.    <u>Peyton is Not Entitled to Equitable Tolling.</u>

In his petition, Peyton argued that he was entitled to equitable tolling on various grounds.

---

[9]  The *Anderson* court stated that on remand the trial court did not need to hold an evidentiary hearing, concluding that equitable tolling necessarily applied because "[a] review of the record reveals that proof has clearly been provided to indicate that the RCr 11.42 motion was placed in the prison mail system prior to the expiration of the three-year time limit."  *See id.* at 5.  To a federal court's ear, that statement (if considered in isolation) might sound like the Kentucky Court of Appeals was applying the prison mailbox rule.  But through its reference to *Robertson*, the *Anderson* court made plain that it was actually applying Kentucky's doctrine of equitable tolling.  Why?  Because "[p]rior to January 1, 2011, Kentucky utilized a judicially-created test called 'equitable tolling' - a halting of the statute of limitations where a prisoner actually delivered a properly prepared and addressed RCr 11.42 motion to the appropriate prison authorities for mailing prior to the expiration of the limitation period."  *Talbert Commonwealth*, No. 2016-CA-147-MR, 2017 WL 655475, at *2 (Ky. Ct. App. Feb. 17, 2017) (citing *Robertson*, 177 S.W.3d at 792).  And, of course, Peyton did not and cannot claim entitlement to equitable tolling to file his RCr 11.42 motion – after all, he filed it two years *before* the applicable three-year deadline under RCr 11.42(10) to do so had passed.

[10]  Peyton also contends that this Court is bound by *Slone* - and hence that its later, contrary holding in *Boulder* cannot be followed - pursuant to the Sixth Circuit's rule of orderliness.  *See* [R. 15, p. 5 (citing *inter alia*, *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel.")).  This argument is without merit.  The applicable rule is codified in Sixth Circuit Rule 32.1(b), which (with exceptions not pertinent here) requires a subsequent panel *of the Sixth Circuit* to adhere to its own prior, *published* opinions.  *Webster v. Streeval*, No. 0:19-CV-111-HRW, 2019 WL 5848060, at *2 n.5 (E.D. Ky. Nov. 7, 2019).  Both *Slone* and *Boulder* are unpublished opinions by this Court and another in this district, not published opinions from the Sixth Circuit, so the rule has no bearing here.  *See United States v. White*, 768 F. App'x 428, 429 (6th Cir. 2019) ("[A] panel of this court cannot overrule a prior, published decision of another panel 'unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision.'").

[R. 1-1, pp. 10–14].  Equitable tolling permits a federal court to review the merits of a time-barred habeas corpus petition if "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  To warrant equitable tolling, the petitioner must demonstrate: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010).

Peyton's petition first cited decisional law identifying four possible grounds for such tolling, including:

(a)  when a petitioner was abandoned by counsel during post-conviction proceedings, *see Maples v. Thomas*, 565 U.S. 266 (2012);

(b)  egregious or professional misconduct by petitioner's counsel that caused him to miss a filing deadline, *see Nassiri v. Mackie*, 967 F.3d 544 (6th Cir. 2020);

(c)  where prison lockdowns, such as those caused by the coronavirus pandemic, prevented access to the prison's law library, *see Brown v. Adams*, No. 3:20-cv-788-CRS, 2021 WL 3598544 (W.D. Ky. Aug. 13, 2021); and

(d)  when a petitioner, through no fault of his own, does not learn about the status of his appeal for an excessive period of time, *see Keeling*, 673 F.3d at 464.

[R. 1-1, pp. 10–12].  But as noted by the Recommendation, nowhere in his discussion did Peyton suggest, let alone establish, that any of these grounds actually apply to him.  *See* [R. 8, pp. 8–9].  The burden of establishing that equitable tolling is warranted falls squarely on Peyton.  *Keeling*, 673 F.3d at 463 ("Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the movant retaining the ultimate burden of persuading the court that he or she is entitled to

equitable tolling.") (cleaned up).  Peyton made no effort to meet that burden with respect to these four grounds, and he therefore fails to establish entitlement to relief with respect to them.[11]

Peyton also argued that he did not obtain a "complete" copy of his "case file" until August 2019, and that the county jail where he was housed until April 2017 did not have any legal resources.  [R. 1-1, pp. 13–14].  On the first point, correspondence attached to the petition makes plain that the "delay" in receiving materials from the criminal prosecution was caused, in substantial part, because Peyton chose to request different portions of the state court record in a series of letters directed to different persons or entities over an extended period of time, in some instances waiting considerably more than one year after judgment was entered before doing so. Peyton received at least a portion of his case file as early as June 2016 (just one month after he was sentenced) from defense counsel, *see* [R. 1-2, p. 3], and various discovery materials from his case file in April and May 2017, *see id*. at 5.  In May 2017, the Kentucky Department of Public Advocacy ("DPA") sent Peyton "a complete copy of any and all material within the possession and control of the [DPA]" relating to his case, *see id*. at 8, followed by DPA sending Peyton "the **entire** contents of your file including all paper contents and CD's" in June 2017, *see id*. at 10 (emphasis in original).

Peyton first sought court filings and transcripts from the Morgan Circuit Court in May 2017, but was told that it would cost 25¢ a page since the free copies had been sent to his counsel when the original documents were first filed.  *See id*. at 7.  Peyton waited eight months before making a renewed request upon the circuit court for documents and CDs/DVDs of court hearings in February and March 2018.  *See id*. at 12, 14.  Because Peyton apparently lacked the funds to

---

[11] In any event, nothing in the available record indicates that any of them apply here.  Indeed, Peyton's persistent and active participation in his state collateral review proceedings indicates that he could have filed his federal habeas petition long ago.

pay for all the copies he requested, he sent his mother there in person in April 2018 to get copies made.  But, he alleges, as a result of asserted miscommunication between his mother and court staff she was able to obtain copies of only paper documents, not computer or video discs.  *See id.* at 15–16.

Peyton's correspondence thus indicates that he had received portions of his "case file" as early as June 2016, and apparently had received most of what his defense counsel possessed by May or June 2017.  While he experienced difficulties obtaining documents from the Morgan Circuit Court, he did not even file his first request for such documents until May 2017, just a month before the deadline to file his Section 2254 expired.  While Peyton suggests that he failed to seek documents sooner because he did not have access to a law library until April 2017, nothing *prevented* him from seeking and obtaining all of the pertinent documents long before that time, or indeed at any time during the entire 2014–2016 criminal prosecution itself or immediately after judgment was entered.  The Recommendation correctly concluded, therefore, that Peyton's "difficulty" in obtaining state court records, to the extent that it can fairly be characterized as such, does not warrant equitable tolling.  *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750-52 (6th Cir. 2011) ("Standing alone, however, the unavailability of or delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling. . . . Hall's inability to access the transcript of his trial is unfortunate.  But it is not enough, even in combination with his *pro se* status and limited law-library access, to warrant the equitable tolling of AEDPA's limitations period.") (collecting cases).

Peyton has also failed to provide specific facts which indicate that he acted diligently to file his petition but was prevented from doing so.  Peyton filed his § 2254 petition *six years* after it was due, and four years after he indicates that he had obtained the state court documents that he

needed to proceed in 2019.  The Court has little trouble concluding that Peyton has failed to demonstrate he pursued federal habeas relief diligently.  *Cf. Jones v. Klee*, 691 F. App'x 822, 824 (6th Cir. 2016) ("Similarly, Jones has not explained why it took him another two months to file his petition after his access to the law library was restored. Jones, therefore, has not shown that he acted diligently in filing his habeas petition."); *Blain v. United States*, 766 F. App'x 327, 330–31 (6th Cir. 2019) ("Although Blain may have been diligent in his attempts to contact trial counsel and the district court in obtaining what he deemed 'necessary documents,' upon receipt of that information he waited more than five months to file his § 2255 motion.  In these circumstances, Blain cannot be said to have diligently pursued his rights.").  *See also Portman v. Wilson*, No. 10-CV-169-KSF, 2010 WL 4962922 at *2 (E.D. Ky., Dec. 1, 2010)  ("It is well settled that the lack of legal assistance, ignorance of the law or the frustrations of typical prison conditions that make prison-based litigation difficult, such as transfers, lack of access to copies and legal materials, do not constitute exceptional  circumstances justifying equitable tolling.") (collecting cases).[12]

---

[12] And, in any event, while Peyton complained *generally* in his petition of delays in obtaining more documents, *see* [R. 1-1, pp. 13–14], he made no effort to explain what *specific* documents were missing that were relevant to the ineffective assistance of counsel claims he asserts in his Section 2254 petition, and hence how their absence actually interfered with timely filing.  Without such a demonstration, he cannot show that their absence prevented him from filing his Section 2254 petition on time. Similarly, Peyton also appears to believe that he need only show circumstances warranting equitable tolling up to the June 2017 deadline to file his Section 2254 petition, but not thereafter.  *See* [R. 15, p. 6] ("The extraordinary circumstances Petitioner faced made it impossible to file on time.").  That is incorrect.  Analyzing equitable tolling with respect to his RCr 11.42 motion makes no sense, as Peyton filed it a full two years *before* it was due under RCr 11.42(10).  *See supra* note 9.  There was therefore nothing to toll.  And as *Jones* and *Blain*, cited above, make clear, he must justify the application of equitable tolling based upon circumstances before the deadline and continuing up until the date he actually filed his Section 2254 petition in May 2023.  *Cf. Alexander v. Superintendent*, No. 9:07-CV-680, 2009 WL 762108, at *2 (N.D.N.Y. Mar. 19, 2009) ("the party seeking equitable tolling must have acted with reasonable diligence throughout the entire period sought to be tolled.") citing (*Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)); *Balderrama v. Conway*, No. 04-CV-451-S-MHW, 2006 WL 1582188, at *3 (D. Idaho June 2, 2006) ("The Court now determines whether the time periods to which Petitioner is likely entitled to equitable tolling are enough to cover the entire period of time between the expiration of the statute of limitations and the actual filing date of the federal Petition."); *Gargiulo v. Hayman*, No. 09-CV-775 (NLH), 2009 WL 1346620, at *8 (D.N.J. May 13, 2009) (same).  *See also Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly.  We have allowed equitable tolling in situations

**B.**  **Peyton, Without Justification, Failed to Exhaust his State Court Remedies.**

The foregoing analysis makes clear that Peyton filed his petition far too late to warrant equitable tolling.  But even if that conclusion were not evident, it is plain that he filed it too soon and failed to exhaust his state remedies.

On the date that a federal habeas petition is filed, the petitioner must have already fully utilized (or "exhausted") all available opportunities to present a particular claim to the state courts for consideration.  28 U.S.C. § 2254(b)(1)(A).  This rule is intended to promote respect for state court judgments by giving state courts the first opportunity to consider and correct any asserted error of federal constitutional dimension.  *See Darr v. Burford*, 339 U.S. 200, 204 (1950) (noting that principles of comity generally require "that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter").  And such concerns are particularly acute in the criminal context: "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."  *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr*); *see also Allen v. Mitchell*, 953 F.3d 858, 866 (6th Cir. 2020).  Peyton implicitly acknowledges that he has not done so; after all, his RCr 11.42 motion still pends.  *See* [R. 1-1, p. 15]; [R. 15, pp. 7, 9].

Peyton nonetheless argues that the Court should consider his claims now because the Kentucky courts have taken longer than he would like to decide if they have merit.  *See* [R. 1-1, p.

---

where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."); *McQuiddy v. Ware*, 20 Wall. 14, 19, 22 L.Ed. 311 (1874) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights.").

15].   It is true that if circumstances make plain that the state's appellate or post-conviction processes are demonstrably ineffective to protect the prisoner's rights, a federal court may grant habeas relief without requiring the petitioner to engage in a futile effort to exhaust those remedies. 28 U.S.C. § 2254(b)(1)(B)(i), (ii); *Lucas v. People of State of Mich.*, 420 F.2d 259, 261 (6th Cir. 1970).   One such circumstance can be "[i]nordinate delay in adjudicating state court claims," especially if "the state clearly is responsible for the delay." *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992).

As the Recommendation noted, however, Sixth Circuit precedent makes clear that delay in state court proceedings alone is generally not enough to excuse exhaustion; both the cause of the delay and its resulting effects have a role to play.   [R. 8, pp. 11–13].   *See Turner v. Bagley*, 401 F.3d 718, 724-26 (6th Cir. 2005) (excusing exhaustion where, at time the federal petition was filed, the state appellate court had dismissed the petitioner's direct appeal for want of prosecution because numerous court-appointed counsel had not filed any appellate brief during the entire eight year span it had been pending); *Phillips v. White*, 851 F.3d 567, 574, 576 (6th Cir. 2017) (excusing exhaustion where the presiding judge took no immediate action after holding two evidentiary hearings four years into the case, and had still not decided the post-conviction motion seven years after it was filed when the judge was himself indicted shortly thereafter).

More recently still, a panel of the Sixth Circuit has implied that *Workman's* "inordinate delay" exception is "in many respects [] unfaithful to Congress's formulation in § 2254(b)(1)(B)(ii)." *Johnson v. Bauman*, 27 F.4th 384, 391 (6th Cir. 2022) (noting that "a lengthy proceeding, while in some instances lamentable, does not always leave a petitioner incapable of securing his rights," and hence "ineffective" within the meaning of § 2254(b)(1)(B)(ii)).   Of course, the rule of orderliness prevented the *Johnson* panel from expressly overruling *Workman* or

frankly disregarding its standard. *See Salmi*, 774 F.2d at 689 ("A panel of this Court cannot overrule the decision of another panel."); *United States v. Jarvis*, 999 F.3d 442, 445–46 (6th Cir. 2021) ("Forced to choose between conflicting [Sixth Circuit] precedents, we must follow the first one."). The governing principles in the Sixth Circuit after *Johnson* are thus the same as they were before it: those established in *Workman*.

Regardless of which standard applies, however, Peyton fails to meet it. Citing to the record selectively, delay is all he points to. *See* [R. 1-1, pp. 15–16]; [R. 15, pp. 8–9]. But a more thorough canvass of the record paints a different picture.

After Peyton filed his 11.42 motion in June 2017, the Morgan Circuit Court promptly ordered a response and set a status hearing. Shortly thereafter, the court appointed counsel from the Kentucky Department of Public Advocacy ("DPA") to represent Peyton and granted counsel additional time to supplement Peyton's *pro se* motion.[13] DPA moved to withdraw in August 2018; that request was later granted. Substantial additional proceedings transpired throughout 2018 and 2019, the docket reflecting multiple and recurring entries throughout this period. In November 2018, Peyton filed a CR 60.02 motion to vacate his conviction, asserting grounds for relief additional to those already pending in his RCr 11.42 motion. That motion was briefed in early 2019. The Trial Docket reflects that in April 2019 Peyton requested that the case be held in abeyance for ninety days; at the conclusion of that period, privately retained counsel filed a notice of appearance. In October 2019, retained counsel filed a supplement to Peyton's *pro se* 11.42 motion.

---

[13] Peyton claims in his Objections that "the trial court delayed appointing counsel (DPA) for twelve (12) months" after he filed his motion, referencing a June 13, 2018 Order. *See* [R. 15, p. 8, n.21]. The Trial Docket, however, indicates that DPA was appointed within three months, on September 5, 2017, a date confirmed by DPA in its August 29, 2018, motion to withdraw. That motion may be downloaded and viewed in PDF format. The Trial Docket also reveals a November 3, 2017, Order directing DPA to file any supplement to Peyton's *pro se* RCr 11.42 motion.

The Trial Docket reflects little activity between January 2020 and November 2021.  Case progress resumed at that time, with the Trial Docket reflecting hearings, motions, briefing and orders on a recurring basis throughout 2022, 2023, and into 2024. A status hearing was recently held on March 25, 2024.

A fair-minded review of the Trial Docket indicates that there have certainly been delays in the Morgan Circuit Court.  In particular, the roughly twenty month gap in progress in 2020 and 2021 is troublesome.  However, the docket also shows persistent case advancement and provides a better understanding of possible causes for the delays.  As previously noted, Peyton has amended or supplemented his original RCr 11.42 motion several times and added even more claims in his separate motion under CR 60.02.  He has also had three separate attorneys, two court-appointed and one retained, each of whom needed to review the voluminous state court record to ascertain whether any viable grounds for relief existed.  Eventually, two were permitted to withdraw and one unfortunately passed away, in each instance occasioning further delay not attributable to the state.

Under such circumstances, the Recommendation correctly concluded that while the state post-conviction proceedings in the Morgan Circuit Court have moved slowly at times, Peyton has failed to show the kind of extreme "inordinate delay" required to justify disregarding the exhaustion requirement.  *See* [R. 8, pp. 11–13].  *See Johnson*, 27 F.4th at 395 (noting that "post-sentencing litigation [] often proceeds incrementally"); *Felts v. Lee*, No. 3:17-CV-01514, 2018 WL 8996621, at *2 (M.D. Tenn. Sept. 6, 2018) (holding that withdrawals of counsel due to disagreements about the merits of petitioner's claims is not wholly attributable to the state, and therefore did not warrant excusing the exhaustion requirement).  Further, Peyton has not demonstrated that he is "without recourse in state court" to pursue his claims. *Turner*, 401 F.3d at

- 21 -

726.  After all, proceedings in his case are currently moving forward.  And should they stall as he fears, he can file a motion in the Morgan Circuit Court to expedite the case, or a petition for a writ of mandamus in the Kentucky Court of Appeals.  In sum, the record indicates that Peyton has avenues to continue pursuit of his habeas claims in the state courts, rendering consideration of them by this Court premature.  *Workman*, 957 F.2d at 1344.

### III

The Court will deny Peyton's § 2254 petition for the reasons stated.  Because the Court dismisses Peyton's petition purely on procedural grounds, to be entitled to a certificate of appealability he must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" *and* "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In his Objections, Peyton challenges the Recommendation's conclusions that his petition is time-barred and his claims unexhausted.  *See* [R. 1, pp. 3–10].  However, he makes no argument in his Objections that his petition states one or more valid substantive constitutional claims, *see id.* at 10–11, and conclusory repetition of the *Slack* standard is not enough.  More fundamentally, for the reasons outlined in the Recommendation and as set forth herein, the Court finds that reasonable jurists would not disagree with either or both conclusions that Peyton's petition is untimely and that he has failed to establish adequate grounds to excuse his admitted failure to exhaust his state court remedies.  The Court will therefore deny a certificate of appealability.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

1.	The Court **OVERRULES** Peyton's Objections. **[R. 15]**.

2.      As supplemented by this Memorandum Opinion and Order, the Court **ADOPTS** Magistrate Judge Smith's Report and Recommendation **[R. 8]** as this Court's findings of fact and conclusions of law.

3.      The Court **DENIES** Peyton's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. **[R. 1]**.

4.      The Court **DENIES** a certificate of appealability as to any claim asserted in the petition.

5.      The Court will enter an appropriate Judgment.

6.      This matter is **STRICKEN** from the docket.

This the 9th day of April, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY